F I L E D
United States Court of Appeals
Tenth Circuit

NOV 22 1999

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

LOUIS DEAN COSCO; SCOTT
BAILEY; TIMOTHY PAULEY; JEFF
FULLER; MIKE CROSS; JIMMY D.
MADDOX; JAY MEHRING; and
MICHAEL J. WESTMARK,

        Plaintiffs - Appellants,

v.

JUDITH UPHOFF; BRUCE
DANIELS; GARY STARBUCK;
VANCE EVERETT; WILLIAM
HETTGAR; KENNETH KINNEY; and
LARRY HEFFNER, in their individual
and official capacities as employees of
the State of Wyoming,

        Defendants - Appellees.

No. 99-8036

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 97-CV-300-J)

---

Submitted on the briefs: *

---

    *After examining the briefs and the appellate record, this three-judge panel
has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th

(continued...)

Louis D. Cosco, Scott Bailey, Timothy Pauley, Mike Cross, Jimmy Maddox, and Jay Mehring, Rawlins, Wyoming; Jeff Fuller, Olney Springs, Colorado; and Mike Westmark, Des Moines, Iowa, Appellants pro se.

Gay Woodhouse, Attorney General; John W. Renneisen, Deputy Attorney General; and Francisco L. Romero, Assistant Attorney General, Cheyenne, Wyoming, for Defendants-Appellees.

_____

Before **TACHA** , **McKAY** , and **MURPHY** , Circuit Judges.

_____

**PER CURIAM** .

_____

Appellants, eight pro se Wyoming prison inmates,[1] appeal from a district court order under Fed. R. Civ. P. 12(b)(6) dismissing their civil rights complaint against several employees of the Wyoming Department of Corrections. We affirm.

While incarcerated, appellants have acquired personal property, including "hobby" and legal materials, which they kept in their cells. Shortly after the murder of a corrections officer on June 26, 1997, appellees adopted a policy that limited the amount of property prisoners could keep in their cells. The new policy

_____

[*](...continued)
Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1]Appellant Westmark is no longer incarcerated.

- 2 -

provided for the storage of unauthorized property for ninety days and gave

inmates the opportunity to ship their property out of the prison to a location of

their choice.  As a result of the new policy, prison officials removed property

from appellants' cells.

Appellants filed their complaint under 42 U.S.C. § 1983, alleging violations

of their First, Fifth, Ninth and Fourteenth Amendment rights.  Appellants claimed

that appellees deprived them of their property without due process or equal

protection of the law. [2]  In addition, appellants contended that appellees denied

them access to the courts by restricting the legal materials they could keep in their

cells, delaying communications among prisoners, restricting photocopying, and

limiting access to the law library.

## I.  Due Process Claim

Appellants argue that the Wyoming State Penitentiary's Inmate Rules

Handbook (IRH) creates a constitutionally protected right to keep the disputed

property in their cells and a constitutionally protected right to any income derived

from that property.  They allege that when prison officials enforced the new

policy without hearings, they deprived appellants of their property without due

---

[2]Although appellants appear to have raised an equal protection claim in the district court and on appeal, they have failed to allege that they were treated differently than those similarly situated.  Consequently, their equal protection claim is entirely conclusory and without merit.

process of law.

It is clear from the complaint that appellants are not arguing about the ownership of the property but rather the right to keep the hobby and legal materials in their cells. Essentially, they argue that by propounding the affirmative language of the prison regulations extant before the new policy, the state created a property interest in the prisoners' right to keep these items in their cells which could not be taken away without due process of law. They also include a claim of property interest in income they would have derived from their hobby activities. They rely on the methodology of Hewitt v. Helms, 459 U.S. 460, 472 (1983), to arrive at their claim of property interest protected by the Due Process Clause. Although Hewitt involves due process by virtue of a claimed liberty interest, the same methodology has been employed in claims of property interests protected by the Due Process Clause of the Fourteenth Amendment.

Basically, the Hewitt methodology on which appellants rely looks to mandatory language in statutes or regulations to determine whether the right in question rises to a level which can only be withdrawn by observing due process standards. In claims involving property interest, the methodology relies on a showing that the regulatory language is so mandatory that it creates a right to rely on that language thereby creating an entitlement that could not be withdrawn without due process. See Board of Regents of State Colleges v. Roth, 408 U.S.

- 4 -

564, 577 (1972); Perry v. Sinderman, 408 U.S. 593, 602-03 (1972); and Gillihan

v. Shillinger, 872 F.2d 935, 939 (10th Cir. 1989).

In Sandin v. Conner, 515 U.S. 472, 477-84 (1995), the Supreme Court

expressly rejected that methodology in the context of prison liberty interests.

While we acknowledge that at least one circuit has expressed its opinion that

Sandin "did not instruct on the correct methodology for determining when prison

regulations create a protected property interest," Bulger v. United States Bureau

of Prisons, 65 F.3d 48, 50 (5th Cir. 1995), [3] we do not see how the Supreme Court

_____

[3]Without directly holding, the Sixth and Ninth Circuits have also suggested
that Hewitt-type property interests are not affected by Sandin. See Woodard v.
Ohio Adult Parole Auth., 107 F.3d 1178, 1182-83 (6th Cir. 1997) (noting that
"the Supreme Court has made it clear that both state law and the Due Process
Clause itself may create [a liberty] interest," while the prevailing doctrine
instructs that "state law controls as to the existence of a property interest"), rev'd
on other grounds, 523 U.S. 272 (1998); Martin v. Upchurch, No. 93-16907, 1995
WL 563744, at *2 n.2 (9th Cir. Sept. 22, 1995) (unpublished disposition)
(concluding that under Sandin a prisoner "had no liberty interest in his prison
job," but ruling that the prisoner had no property interest in the prison job because
state law left the employment of prisoner to the discretion of prison officials and
the prisoner "failed to cite any prison regulation which mandates a particular
classification").
        The Seventh Circuit appears to lean the other way, suggesting without
directly holding in Abdul-Wadood v. Nathan, 91 F.3d 1023 (7th Cir. 1996), that
Sandin controls claims of Hewitt-based property interests in the prison setting.
See id. at 1025 (fortifying its conclusion that minor disciplinary penalties imposed
by prison officials "do not implicate any liberty or property interest" by citing to
Sandin); see also Logan v. Gillam, No. 94-3794, 1996 WL 508618, at *3 (7th Cir.
Aug. 30, 1996) (unpublished disposition) (citing Abdul-Wadood to support its
conclusion: "Although Sandin involved a claim that a regulation created a liberty
interest, its analysis also applies to claims that prison regulation create federally-
(continued...)

- 5 -

could have made clearer its intent to reject the Hewitt analysis outright in the prison context. Indeed, if we are to avoid Hewitt's "two undesirable effects" ((1) creating disincentives for states to codify prison management procedures and (2) entangling the federal courts in the day-to-day management of prisons) in the context of prison property interests, Sandin, 515 U.S. at 482, and return the focus of our due process inquiry from "the language of a particular regulation" to "the nature of the deprivation" as Sandin mandates, id. at 481, we must conclude that the Supreme Court foreclosed the possibility of applying the Hewitt methodology to derive protected property interests in the prison conditions setting. [4] The

---

[3](...continued)
enforceable property interests.")

[4]Our conclusion is further bolstered as we consider it unlikely that the Supreme Court would establish a standard in the prison setting more sensitive to property interests than liberty interests. At times the Court has defined the two interests differently. In Justice Breyer's Sandin dissent, for example, he noted, "In protecting property, the Due Process Clause often aims to protect *reliance*, say, reliance upon an 'entitlement' . . . . In protecting liberty, however, the Due Process Clause protects, not this kind of reliance upon a government-conferred benefit, but rather an absence of government restraint . . . ." Sandin, 515 U.S. at 497-98 (Breyer, J., dissenting) (citations omitted). At other times the Supreme Court has used the two interests analogously. Consider, for example, the Supreme Court's liberty interest analysis in Wolff v. McDonnell, 418 U.S. 539, 557 (1974), which "parallel[ed] the accepted due process analysis as to property" in part because "a person's liberty is equally protected," id. at 558, or the Court's interchangeable use of the two terms in Paul v. Davis, 424 U.S. 693, 710-11 (1976), where it reviewed "a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause." We do not have to decide whether the two interests are to be equally protected, but it seems appropriate to
(continued...)

- 6 -

Supreme Court mandate since Sandin is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents "the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest." [5] Id. at 486.

Appellants claim in the case at hand that mandatory language in the regulations governing what the prisoners could keep in their cells created a property interest or entitlement and ensured them a continuation of the same interest absent due process. That is precisely the methodology rejected by the Supreme Court in Sandin. The regulation of type and quantity of individual possession in cells is typical of the kinds of prison conditions that the Court has declared to be subject to the new analysis set forth in Sandin. Applying the Court's analysis, we cannot say that the new regulations promulgated in this case

---

[4](...continued)
conclude that if one merited more protection than the other that would be liberty.

[5]The Court noted:

> Prisoners such as Conner, of course, retain other protection from arbitrary state action even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available.

Sandin, 515 U.S. at 487 n.11.

present "the type of atypical, significant deprivation [of their existing cell property privileges] in which a State might create a [property] interest." Id. at 486.

Appellants in their brief make clear that they are also relying on a Hewitt - Roth argument about income from hobbies, not the right to a prison job foreclosed by Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986). Arguing that hobby-based income is actually a property interest and not a prison job, however, does not limit the applicability of Sandin. The Hewitt-Roth methodology is as inapplicable to the claim of a right to earn hobby incomes as it is to the kind of property interests discussed above.

Even though the trial court did not rely on Sandin analysis, our review of the complaint leads us to conclude that Sandin applies and that the trial court properly dismissed all the due process claims pursuant to Rule 12(b)(6).

## II. Denial of Access to the Courts

To establish that they have been denied access to the courts, appellants must demonstrate "actual injury." See Lewis v. Casey, 518 U.S. 343, 349 (1996). In their materials, however, Appellants have merely set forth conclusory allegations of injury. There is no evidence to indicate that appellees hindered appellants' efforts to pursue a legal claim. Therefore, we agree with the district court that, under Rule 12(b)(6), appellants have failed to state a claim for denial

of access to the courts.

### III.  Motion to Strike

During the course of this appeal, appellants filed a supplemental index. Appellees moved to strike appellants' supplemental index because it contains several documents that were not filed in the district court and do not appear in the record.  In response, appellants filed a motion for remand.  Although documents which are not filed with the district court are not part of the record, <u>see</u> Fed. R. App. Proc. 10(a)(1) (1999), we have nevertheless reviewed the supplemental documents filed by appellants and find that they do not affect our decision on the merits.  Accordingly, we deny both appellees' motion to strike and appellants' motion for remand.

AFFIRMED.