**F I L E D**

PUBLISH

**August 30, 2006**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GEORGE W. STEFFEY, JR.,

    Plaintiff-Appellant,

v.

No. 05-7064

DAVID ORMAN, MIKE MULLIN,
K. WINGO, MELODY BRYANT,
GARY GIBSON, RON WARD,
MELINDA GUILFOYLE., in their
individual and official capacities,

    Defendants-Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 02-CV-497-P)

---

Submitted on the briefs:[*]

George W. Steffey, Jr., Pro Se.

Gregory Thomas Metcalfe, Assistant Attorney General, Oklahoma Attorney
General's Office, Oklahoma City, Oklahoma, for Defendants-Appellees.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

Before **PORFILIO**, **BALDOCK**, and **EBEL**, Circuit Judges.

**EBEL**, Circuit Judge.

Plaintiff George W. Steffey, an Oklahoma state prisoner appearing pro se, filed a 42 U.S.C. § 1983 civil rights complaint against prison officials alleging that they deprived him of his property in violation of his constitutional due process rights when they confiscated a money order sent to him. The district court granted summary judgment in favor of defendants. We affirm.

## BACKGROUND

The following is undisputed. Mr. Steffey was incarcerated at the Oklahoma State Penitentiary (OSP) at all times relevant to this appeal. OSP prison rules prohibit an inmate from receiving money from family members of any other inmate, and permit OSP to confiscate any monies sent to an inmate in violation of these rules.[1] Pam Grubb, the mother of an Oklahoma Department of Corrections

---

[1] The rule, OSP-120230-02, states in relevant part:

X. Persons on an inmate visiting list, family members not on an inmate visiting list, or known acquaintances of any inmate may not send monies into the facility for deposit in another inmate's trust fund account.

XI. When there is reason to believe that an inmate, in collusion with family members, friends, or known acquaintances, is attempting to

(continued...)

(ODOC) inmate, sent Mr. Steffey a fifty-dollar money order at OSP. OSP prison officials immediately notified Mr. Steffey that Ms. Grubb's name appeared on a prison list of ODOC family members, that the money order therefore violated OSP-120230-02, and, as a result, had been confiscated as contraband. The funds were never deposited into Mr. Steffey's inmate trust account, nor were they returned to Ms. Grubb.

Mr. Steffey used the OSP prison grievance process to challenge the confiscation. After exhausting his administrative remedies, Mr. Steffey filed his § 1983 civil rights complaint alleging that the confiscation of these funds deprived him of his property in violation of his due process rights. The district court dismissed the complaint against the ODOC and the individual defendants in their official capacities because these defendants are immune from suit under the Eleventh Amendment. It also dismissed the claims against numerous defendants

[1](...continued)
    circumvent facility rules by transferring funds to another inmate, the incoming money orders will be held until a thorough investigation has been conducted. If the investigation reveals that an attempt to circumvent facility rules has occurred, the money orders will be considered contraband and will not be returned to the sender.

    XII. In the event a money order is confiscated as contraband, the intended recipient inmate and the sender will be notified in writing of the action by the person who stopped the transfer.

R. Doc. 21, Ex. D, at 2.

based on a lack of personal participation in the alleged violations. Mr. Steffey does not appeal these rulings.

The only remaining defendant[2] was David Orman, the OSP official who confiscated the funds. The district court ruled that Mr. Orman was entitled to qualified immunity because his actions did not violate Mr. Steffey's constitutional rights. The court ruled it was undisputed that the money order violated OSP-120230-02, because Mr. Steffey admitted during his administrative grievance proceedings that Ms. Grubb was the mother of an ODOC inmate. It ruled the money order was, therefore, contraband upon receipt at the prison, that Mr. Steffey never acquired any property interest in the contraband money order and, thus, had no right to any predeprivation due process hearing with respect to the confiscation of those funds. Mr. Steffey appeals this ruling.

ANALYSIS

"We review the grant of summary judgment de novo, applying the same standard the district court should apply under Fed. R. Civ. P. 56(c)." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1218 (10th Cir. 2006) (quotation omitted). Because Mr. Orman asserted a qualified immunity defense, however, the summary judgment standards are subject to a somewhat different analysis from other

---

[2]      Another remaining defendant, Gary Gibson, the former OSP warden, died on September 12, 2003. Defendants' counsel filed a suggestion of death pursuant to Fed. R. Civ. P. 25(a)(1), and Mr. Steffey did not file a motion for substitution of parties. Accordingly, Mr. Gibson is dismissed. *See id*.

summary judgment rulings. *See Lighton v. Univ. of Utah*, 209 F.3d 1213, 1221 (10th Cir. 2000). "Qualified immunity is designed to shield public officials from liability and ensure that erroneous suits do not even go to trial." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (quotation omitted). When a defendant bases a motion for summary judgment on the defense of qualified immunity, the plaintiff must show that the defendant's actions violated a specific statutory or constitutional right, and that "the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id*.

## Due Process Claim

A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). The district court analyzed Mr. Steffey's property interest claim under the analytical framework set forth in *Gillihan v. Shillinger*, 872 F.2d 935 (10th Cir. 1989) (per curiam). There, this court held that, absent compelling reasons to the contrary, prisoners are entitled to a predeprivation hearing before a prison can deprive the inmate of property pursuant to an affirmatively established policy. *Id*. at 939-40. The district court

distinguished *Gillihan* and its predeprivation-hearing requirement on the basis that Mr. Steffey had no property interest in the money order because it was contraband.

The requirement in *Gillihan* of a predeprivation hearing is relevant only if an inmate first demonstrates that he has a protected property interest, *id*. at 938, and here we conclude that Mr. Steffey had no property right protected by the Fourteenth Amendment to receive a contraband money order while in prison. In *Sandin v. Conner*, 515 U.S. 472 (1995), decided after *Gillihan*, the Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. This court has ruled that property interest claims by prisoners are also to be reviewed under *Sandin's* atypical-and-significant-deprivation analysis. *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999); *see also Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (suggesting but not expressly holding that *Sandin* applies to property interest claims brought by prisoners); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir. 1996) (same).[3] We ruled in *Cosco* that, "[t]he

_____

[3]     The Second and Fifth Circuits have held that *Sandin* applies only to liberty interests claims. *Handberry v. Thompson*, 446 F.3d 335, 353 n.6 (2d Cir. 2006) ("*Sandin* was concerned with the proper definition of *liberty* interests, not property interests."); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir.
                                                                            (continued...)

-6-

Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.'" *Id.* at 1224 (alteration in original, quoting *Sandin*, 515 U.S. at 486).

"[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin*, 515 U.S. at 485 (citation and quotation omitted). The Supreme Court has long recognized that an inmate's right to receive mail and other packages may be limited by prison regulations that are reasonably related to legitimate penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 416 (1989) (holding that prison authorities have broad discretion in regulating the entry of material into a prison); *Turner v. Safley*, 482 U.S. 78, 91-92 (1987) (upholding prison restrictions on mail as reasonably related to legitimate security concerns); *Bell v. Wolfish*, 441 U.S. 520, 550, 555 (1979) (upholding ban on inmate receipt of certain hardback books and packages containing personal property and food in order to counter risk of smuggled contraband).

_____

[3](...continued)
1995) (declining to extend *Sandin's* "atypical and significant hardship" analysis to property claims by prisoners). As we noted in *Cosco*, the Sixth and Ninth Circuits have suggested, but not explicitly held, that *Sandin* does not govern prisoner property interest claims. *Cosco*, 195 F.3d at 1223 n.3 (citing cases).

Prison officials at OSP have a legitimate interest in controlling both the amount and source of funds received by inmates. OSP presented evidence that OSP-120230-02 serves its legitimate penological interest in preventing inmates from using their family members to pay off their drug, gambling or other debts to fellow inmates, or from extorting money from an inmate's family with threats of harm. Substantial deference is given to the professional judgment of prison administrators because they have "significant responsibility for defining the legitimate goals of [the prison] and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Mr. Steffey asserts no legal or evidentiary challenge to the validity of OSP-120230-02. *Overton*, 539 U.S. at 132 (holding that burden is not on the state to prove the validity of the prison regulation, but on the prisoner to disprove it). We therefore conclude that OSP-120230-02 is reasonably related to a legitimate penological interest and is a valid restriction on Mr. Steffey's right to receive money from certain outside sources. *See Overton*, 539 U.S. at 132.

Likewise, Mr. Steffey has presented no evidence or authority for the proposition that the deprivation here was an "atypical and significant hardship" that subjected him to conditions much different from those ordinarily experienced by inmates serving their sentences in the customary fashion. As noted above, it is well-established that prisons have broad discretion in regulating the entry of materials into prison. More specifically, the Supreme Court long ago

characterized the receipt of money as one type of contraband that prison officials could legitimately ban. *See Bell*, 441 U.S. at 551, 559 (upholding prison regulatory ban on inmate receipt of packages because "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence"). Decisions from this and other circuits demonstrate that the seizure and forfeiture of currency as contraband is a typical incident of prison life, and is not a significant property interest deprivation. *See Cosco*, 195 F.3d at 1224 (holding that regulation of the type and quantity of personal property inmates may possess in their cells is a not an atypical, significant hardship of prison life); *Harris v. Forsyth*, 735 F.2d 1235, 1236 (11th Cir. 1984) (holding that prison's confiscation of contraband currency is reasonable restriction on property rights); *Lyon v. Farrier*, 730 F.2d 525, 527 (8th Cir. 1984) (ruling that inmate "cannot seriously argue" he has a protected property interest in contraband personal property found in cell); *Sullivan v. Ford*, 609 F.2d 197, 198 (5th Cir. 1980) (concluding no due process violation where prison confiscated contraband currency in cell).

Nor is it difficult to conclude that the property interest involved here is insignificant. Mr. Steffey's interest in the fifty-dollar money order was no more than an inchoate, unrealized expectation in a gift of contraband funds. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at

-9-

577.  It cannot be said that Mr. Steffey had a legitimate claim of entitlement to the money order.[4]

Thus, given the validity of the regulation in OSP-120230-02, and the typical, insignificant nature of the deprivation, we conclude that Mr. Orman did not violate Mr. Steffey's rights under the Due Process clause of the Fourteenth Amendment when it confiscated the contraband money order.  Therefore, we find no error in the district court's grant of summary judgment.

## Request for Appointed Counsel

Mr. Steffey also contends that the district court erred in denying his motion to appoint counsel.  This court "review[s] a district court's refusal to appoint counsel for an indigent prisoner in a civil case for an abuse of discretion.  The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (quotation and citation omitted).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case."

---

[4]    In *Gillihan*, we stated that inmates have a "property interest" in receiving money from "friends and family outside the prison."  872 F.2d at 938.  That statement appears to be dicta, however, because it is not apparent from the decision that any monies from outside sources were at issue in that case.  *Gillihan* is also distinguishable from this case because the money at issue there was not contraband.  Finally, *Gillihan* was decided before this court held in *Cosco*, 195 F.3d at 1224, that the property-interest due-process rights of prisoners are to be determined based on the nature of the deprivation in accordance with the "atypical and significant" deprivation analysis articulated in *Sandin*.

*Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Hill*, 393 F.3d at 1115 (quotation omitted). In evaluating a prisoner's request for appointed counsel, the court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Id.*

Lack of counsel in this case has not resulted in fundamental unfairness. Mr. Steffey's complaint and pleadings in the district court adequately presented the factual and legal basis of his claim and demonstrated that he understood the basics of his due-process property interest claim. Further, Mr. Steffey was granted the liberal treatment accorded pro se litigants. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). The district court did not abuse its discretion in denying his motion for appointed counsel.

The judgment of the district court is AFFIRMED. Mr. Steffey's outstanding motions are DENIED.