**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARK ANTHONY TROUTT,

Plaintiff-Appellant,

v.

CORRECTIONAL HEALTHCARE
MANAGEMENT, INC.; OKLAHOMA
COUNTY BOARD OF COUNTY
COMMISSIONERS; JOHN
WHETSEL,

Defendants-Appellees.

No. 06-6273
(D.C. No. 04-CV-1750)
(W.D. Okla.)

**ORDER AND JUDGMENT** [*]

Before **HARTZ**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

Mark Anthony Troutt, a state prisoner, appeals pro se from the district

court's order granting the Defendants summary judgment in his suit alleging

deliberate indifference to medical needs. He argues generally that summary

judgment was inappropriate "based on the facts of the case," Aplt. Br. at 18, and

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

he complains specifically that the district court (1) would not permit reasonable discovery; (2) should have appointed counsel for him; and (3) failed to review properly his objections to the magistrate judge's rulings. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

After being arrested on a drug-distribution charge, Mr. Troutt was confined in the Oklahoma County Detention Center (OCDC) in April 2002. He was convicted in September 2003 and was transferred to the Oklahoma Department of Corrections (DOC) the following month to serve a 15-year sentence. The Oklahoma Court of Criminal Appeals reversed Mr. Troutt's conviction, however, and remanded the case for a new trial.

On November 9, 2004, DOC returned Mr. Troutt to OCDC to await retrial. The following day he submitted an "Inmate Health Service Request" form asking to be "medically [t]reated for Hepatitus [sic] C." R., Doc. 105, Ex. G-2. He repeated his request twice more that month. On December 1 he was informed that treatment for Hepatitis C was available only at DOC. In response he sued OCDC's private health-services provider, Correctional Healthcare Management, Inc. (CHM), on December 22, alleging:

> [A]fter being diagnosed with Hepatitis C I was refused medical
> treatment[.] [M]y liver enzymes were elevated while in the custody
> of the county Jail. Due to the stress and strain of not being
> released[ ] and medically treated for a life threatening disease, I
> developed shingles. [CHM] chose not to treat me for my disease and

they would not medically release me so I could seek medical attention for my life threatening disease. . . . [CHM] chose to ignor[e] the value of my life because of the cost and procedure of treatment.

R., Doc. 1 at 2.

In January 2005 Mr. Troutt was again convicted and this time sentenced to 30 years' imprisonment. On January 26 he amended his complaint to add as defendants the Oklahoma County Sheriff, John Whetsel, and the Oklahoma County Board of County Commissioners (the Board). In July 2005 he was transferred back to DOC.

Throughout the course of the proceedings Mr. Troutt filed numerous motions for appointment of counsel. All were either denied on the merits or stricken from the record for lack of service. Mr. Troutt also sought discovery from the defendants and, after receiving their responses, moved to compel, asserting that his "efforts ha[d] been thwarted and objected to." R., Doc. 98 at 2. The magistrate judge denied the motion, and the district court upheld that denial over Mr. Troutt's objection.

In September 2005 the Defendants moved for summary judgment. Documents presented to the district court showed that treating Hepatitis C is not a matter of simply prescribing drugs. Drug therapy can be dangerous and is often unnecessary. The preamble to the DOC protocol for treatment provides the following explanation:

> [H]ow to predict the outcome of chronic Hepatitis C infection in an individual case [is not clear]. Most studies show that at least 80% of persons with chronic Hepatitis C infection will have a mild course without the development of cirrhosis or death from their infection. The remaining 20% will develop cirrhosis; some mild, some severe. A small percentage of those who develop cirrhosis will develop liver cancer. It is this small percentage of persons with severe cirrhosis and cancer who are most likely to benefit from interventions to reduce their risk. Unfortunately there are no clear predictors of who is most likely to benefit from current treatments.
>
> Currently available medication treatments for Hepatitis C infection are fraught with complications. Side effects can be incapacitating, and even fatal. In particular, persons with certain medical and mental health conditions are at high risk for fatal complications of the medications. For these reasons, [DOC] strives to select those people most likely to benefit from the medications and to prevent harm to those most likely to be harmed by the medications.

*Id.*, Doc. 73, Ex. 1 at 1. The protocol sets forth an eight-step process of evaluation, treatment, and follow-up. In step one the diagnosis of chronic Hepatitis C infection is made by checking an inmate's liver-enzyme levels "every 3 months x 3." *Id.* If "2 out of 3 levels [are] elevated," *id.* at 2, inmates are then evaluated in steps two through six to determine whether they are suitable candidates for drug-therapy treatment involving Ribavirin and Interferon antiviral agents. To be suitable, the inmate should have at least two years of incarceration remaining to complete further testing, treatment, and follow-up. Full treatment alone takes 48 weeks. It is provided only at the state penitentiary and three correctional centers; inmates who qualify for medication are transferred to one of those institutions. Inmates who do not qualify for drug-therapy treatment are

"refer[red] to Conservative Treatment," *id.* at 3, 4 (internal quotation marks omitted).

The magistrate judge recommended that summary judgment be entered against Mr. Troutt. The district court adopted the recommendation despite Mr. Troutt's objections and entered judgment for the Defendants.

DISCUSSION

I. Summary Judgment Standards

"We review the grant of summary judgment de novo, applying the same standard as the district court." *Ward v. Utah*, 398 F.3d 1239, 1245 (10th Cir. 2005). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

II. Deliberate Indifference

"[P]rison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (internal quotation marks omitted). The Eighth Amendment applies to the states via the Fourteenth Amendment's Due Process Clause. *See Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991). Also, "[u]nder the Fourteenth Amendment's due process clause, pretrial detainees

. . . are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Barrie v. Grand County, Utah*, 119 F.3d 862, 867 (10th Cir. 1997) (internal quotation marks omitted). Thus, even though Mr. Troutt was both a pretrial detainee and later a convicted prisoner at OCDC, our analysis of his deliberate-indifference claim is not affected by the status of his incarceration.

Deliberate indifference involves both an objective and a subjective component. *See Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006). "The objective component of the test is met if the harm suffered is sufficiently serious to implicate the Cruel and Unusual Punishment Clause." *Id.* (internal quotation marks omitted). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (internal quotation marks omitted).

Mr. Troutt has failed to establish deliberate indifference. He has not even shown negligence. He has provided no reason to challenge the underlying medical assumptions in the DOC protocol, and under that protocol he received proper care. During the initial portion of his confinement at OCDC—from November 2004 to January 2005—Mr. Troutt was awaiting trial. Because he may have been acquitted, there could have been no assurance that he would be confined sufficiently long even to determine his suitability for drug therapy, much less provide such therapy. After his conviction a lengthy confinement could be

-6-

predicted; but he would need to be transferred to a facility prepared to provide proper treatment. And while he was awaiting transfer from OCDC to a DOC facility, his liver enzymes were tested in March and June 2005.[1] Mr. Troutt has provided no evidence that it was unconscionable to delay further evaluation until he left OCDC. On the contrary, his own evidence, a report prepared by the Hepatitis C Support Project, states that "hepatitis C takes a long time to damage the liver[,] . . . many people will never get sick from hepatitis C," and "not everyone with hepatitis C needs to be treated with HCV medicines." R., Doc. 105, Ex. F at 8. The preamble to the DOC protocol echoes these observations.

To the extent that Mr. Troutt claims harm from contracting shingles "[d]ue to the stress of not being released . . . and not being medically treated for [Hepatitis C]," R., Doc. 21 at 2, it is undisputed that he contracted shingles before ever learning that he had Hepatitis C. Consequently, any denial of care for Hepatitis C could not have resulted in Mr. Troutt's shingles.

Mr. Troutt's constitutional rights were not violated. Summary judgment was properly entered on Mr. Troutt's deliberate-indifference claims.

---

[1]     We reject Mr. Troutt's suggestion that his medical records were not authenticated. CHM's chief executive officer submitted an affidavit declaring her familiarity with CHM's medical records and that she knew the records submitted by CHM in seeking summary judgment were the records of Mr. Troutt's medical care.

## III. Discovery

"We review a district court's ruling denying a motion to compel [discovery] for an abuse of discretion." *Norton*, 432 F.3d at 1156. The district court denied Mr. Troutt's motion because (1) he failed to "identif[y] any particular discovery response of any Defendant that is allegedly insufficient"; (2) he stated "only in the most general and conclusory terms that Defendants' responses and objections have thwarted his ability to obtain relevant evidence"; and (3) the "Defendants' discovery responses d[id] not demonstrate on their face" any violation of the Federal Rules of Civil Procedure. R., Doc. 114 at 2. We discern no abuse of discretion.

## IV. Appointment of Counsel

We review for an abuse of discretion the district court's refusal to appoint counsel for an indigent prisoner in a civil case. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006). "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Id.*

In considering a prisoner's request for appointed counsel, the district "court should consider the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Id.* at 1224 (internal quotation marks omitted). The district court denied Mr. Troutt's requests, finding that he had "demonstrated skill in

presenting both the legal and factual aspects of his claims, and the issues raised in this action are not complex at this juncture." R., Doc. 47. We conclude that the district court reasonably assessed Mr. Troutt's ability to represent himself. The court did not abuse its discretion in denying his motion for appointed counsel.

## V. Objections to Magistrate Judge's Rulings

Finally, Mr. Troutt contends that the district court did not properly review his objections to the magistrate judge's "treatment of the progress of the case." Aplt. Br. at 19. We disagree. The district court appropriately considered Mr. Troutt's various objections. *See* Fed. R. Civ. P. 72 (prescribing clear-error review for nondispositive matters and de novo review for dispositive matters); 28 U.S.C. § 636(b)(1) (same).

## CONCLUSION

The judgment of the district court is AFFIRMED. Mr. Troutt's motion to proceed on appeal in forma pauperis is GRANTED; he is reminded of his obligation to continue making partial payments until his filing fee is paid in full.

Entered for the Court

Harris L Hartz
Circuit Judge