**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 9, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KENNETH COUNCE,

    Plaintiff - Appellant,

v.

RYAN WOLTING, Technical Kansas
State Trooper, Kansas Highway Patrol;
KANSAS STATE HIGHWAY PATROL;
TRACY PLOUTZ, Ellsworth County
Sheriff; GREG ARNOLD, Trooper,
Kansas Highway Patrol; DAVID
CHAMBERLIN, Ellsworth County Deputy
Sheriff; JOHN DOE, Civilian with beard;
JOHN DOE, Bearded Civilian's Friend;
JOHN DOE, Deputy Sheriff for Ellsworth
County; JOHN/JANE DOES, Kansas State
Highway Patrol Supervisors and Watch
Commander(s); DARIAN P.
DERNOVISH, Legal Counsel & Records
Custodian, Kansas Highway Patrol; ERIC
D. SAUER, Captain, N & T Commander,
Kansas Highway Patrol; THERESA L.
STAUDINGER, Attorney; MARK A.
BRUCE, Major, Interim Superintendent,
Kansas Highway Patrol; KIRK E.
SIMONE, Asset Forfeiture Coordinator,
Kansas Highway Patrol; CRISTINA D.
TROIANI, Attorney for Sean O'Neil, Chief
of Administrative Appeals,

    Defendants - Appellees,

and

JOE SHEPACK, ELLSWORTH
COUNTY, KANSAS,

No. 18-3056
(D.C. No. 5:13-CV-03199-JTM-KGS)
(D. Kan.)

Defendants.

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Kenneth Counce filed this lawsuit against multiple public officials and private individuals under 42 U.S.C. § 1983. The district court dismissed some of his claims under Federal Rule of Civil Procedure 12(b)(6) and granted summary judgment on other claims based on qualified immunity. Counce now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  Background

This civil rights action stems from a traffic stop and arrest on October 22, 2013. Kansas Highway Patrol (KHP) troopers pulled Counce over on I-70 for routine traffic infractions, then proceeded to a rest stop at his request. Counce appeared nervous, so one of the troopers—Defendant Ryan Wolting—asked him to step outside of his vehicle. A physical altercation took place, with two bystanders coming to the trooper's aid and the trooper ultimately subduing Counce with a Taser. The

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

initial movements that triggered the altercation are preserved on "dash cam" video that is part of the record, though the remainder of the scuffle is captured only through audio. Other dash cam recordings document emergency medical personnel examining and treating Counce at the scene.

Counce was arrested and transported to jail in Ellsworth County, Kansas, where he remained for approximately forty days and received periodic medical treatment for nausea, cold extremities, a potential head injury, and shoulder and back pain. His trip to jail was also recorded on dash cam video. Meanwhile, Randy's Body Shop towed and impounded his vehicle, and troopers confiscated approximately $8,200 in cash.

On November 12, 2013, Counce initiated this pro se action under § 1983. He asserted claims for excessive force incident to his arrest, wrongful confiscation of his currency, denial of access to medical care, and denial of legal postage.[1] Because he was incarcerated at the time, the district court screened his complaint as required by the Prison Litigation Reform Act, 28 U.S.C. § 1915A. It instructed Counce to amend his complaint to comply with Federal Rule of Civil Procedure 8(a).

The operative complaint was filed on October 22, 2015. *See* R., Vol. I at 201-59. Counce asserted sixteen claims[2] against a long list of Defendants, including

---

[1] Notably, Counce filed a parallel state action asserting the same claims, which was dismissed as "a frivolous lawsuit based on false allegations"; however, given the brevity of the state court's ruling, the district court declined to dismiss this lawsuit on res judicata grounds. R., Vol. I at 102 (internal quotation marks omitted).

[2] Though Counce asserts seventeen claims, he inadvertently skipped Count IX.

3

KHP troopers, the former Ellsworth County sheriff and his deputy, jail officials, the bystanders, and even the private attorney who tried to collect a debt owed to Randy's Body Shop (Theresa Staudinger). In addition to the original claims listed above, Counce added claims for denial of due process and equal protection, a violation of the Freedom of Information Act (FOIA), and interference with his right to petition the government. The district court whittled down the claims and defendants per § 1915A(b), *see* R., Vol. I at 267-75.

The district court disposed of the remaining claims in stages. It granted Staudinger's motion to dismiss under Rule 12(b)(6), finding that Counce failed to state a claim against her because she was not a state actor as required by § 1983. *See* R., Vol. I at 377-80. Later, it found that the public officials sued in their individual capacities were entitled to qualified immunity and granted summary judgment in their favor. *See* R., Vol. III at 274-95. On March 2, 2018, the district court entered final judgment against Counce. This timely appeal followed.

Counce was a prolific filer, and the district court issued dozens of orders over four-and-a-half years of litigation. The appellate issues adequately presented herein implicate the following rulings: the district court's refusal to appoint counsel for Counce (Issue 1); its Rule 12(b)(6) dismissal of the claim against Staudinger (Issue 10); its summary judgment dismissal of the claims against the public officials (Issues 5, 6, 10); and its discovery rulings, particularly those relating to the production and alleged modification of dash cam videos (Issues 2, 8, 9). We address each in turn.

4

## II. Analysis

Because Counce is proceeding pro se, "we construe his pleadings liberally." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). We make some allowances for deficiencies, such as unfamiliarity with pleading requirements, failure to cite appropriate legal authority, and confusion of legal theories. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). But we "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record." *Id.*

As a threshold matter, we address the scope of this appeal. The notice of appeal states that Counce appeals "from the final judgment granting the Defendants qualified immunity entered in this action on the 2nd day of March, 2018." R., Vol. III at 297. Based on this language, the appellees ask us to limit our review to the claims resolved in the summary judgment order issued on that same date—namely, the claims against them for excessive force and denial of medical care. We agree the language in the notice of appeal creates an ambiguity about whether Counce only intended to appeal from the grant of qualified immunity. But we construe the designation requirement in Federal Rule of Civil Procedure 3(c)(1)(B) liberally, even though it is jurisdictional. *See Williams v. Akers*, 837 F.3d 1075, 1078 (10th Cir. 2016); *see also Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988) (stating that "the requirements of the rules of procedure should be liberally construed and . . . mere technicalities should not stand in the way of consideration of a case on its merits" (internal quotation marks omitted)).

5

Furthermore, "a notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment." *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002); *accord Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 n.7 (10th Cir. 1994) (articulating "the general rule that appeal from a final judgment supports review of all earlier interlocutory orders" (internal quotation marks omitted)). Under this precedent, our jurisdiction extends to Counce's "attack [of] any nonfinal order or ruling leading up to" the final judgment. *McBride*, 281 F.3d at 1104 (internal quotation marks omitted).

**A. Denial of Motion for Appointment of Counsel**

Counce first argues that the district court erred in denying his requests for appointment of counsel. He contends that he could not prosecute this case without assistance due to the severity of the injuries he received during the traffic stop and his resulting diminished capacity. He further contends that this case was sufficiently complex to warrant appointment of counsel, especially given his status as a prisoner and his limited legal knowledge. The district court disagreed. It found Counce to be literate, characterized his pleadings as "coherent," and noted that "it does not appear his injuries have affected his abilities to present the facts and his claims." R., Vol. I at 264. It also implicitly reasoned that Counce was able to bring a similar lawsuit in state court without legal assistance. *Id.* at 104-05.

We review the district court's refusal to appoint counsel for an abuse of discretion. *See Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006). "It is not enough that having counsel appointed would have assisted [him] in presenting his

strongest possible case, as the same could be said in any case." *Id.* (internal quotation marks and alterations omitted). "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Id.* (internal quotation marks omitted).

Counce summarily states that the denial of counsel resulted in "fundamental unfairness and rudimentary unjust outcomes." *See* Aplt. Opening Br. at 3.A.1 (internal quotation marks omitted). But his conclusory statement is not enough to satisfy this high bar. We agree with the district court's treatment of Counce's claims, as set forth below, and find no abuse of discretion or fundamental unfairness.

### B. Claim Against Private Attorney

Counce also challenges the district court's dismissal of certain individual claims, including its Rule 12(b)(6) dismissal of his claim against Staudinger, the private attorney for Randy's Body Shop who contacted him to collect the debt owed for towing and storage fees. Counce alleged that Staudinger's actions violated his right to be free from unreasonable searches and seizures and deprived him of his property without due process and that she conspired with the KHP to steal his money. *See generally* R., Vol. I at 255-58 (Claim XVII). Staudinger moved to dismiss the claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must make plausible allegations that would support the conclusion that he is entitled to relief.

7

*Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation marks omitted). Applying this standard, the district court held that Counce failed to state a § 1983 claim against Staudinger because her status as a member of the Kansas Bar does not make her a state actor. *See* R., Vol. I at 379-80 (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981)). In addition, it found the allegations in the complaint to be inadequate to establish that Staudinger acted jointly with the state to seize property, as required to clothe her with state authority or to allege a conspiracy claim under § 1983. *Id.* at 379-80 (citing *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998), and *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1455 (10th Cir. 1995)).

We review the district court's order de novo, *see SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014), and find its reasoning sound. "[T]o hold a private individual liable under § 1983, it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State." *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996) (internal quotation marks omitted). The allegations must evidence "a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action." *Gallagher*, 49 F.3d at 1455. Counce's complaint proffers only vague and conclusory allegations to this effect—for instance, that the KHP's asset forfeiture coordinator "had obviously contacted" Staudinger about the status of Counce's confiscated cash

8

so she could "write Counce and threaten and attempt to extort" money from him.  R., Vol. I at 258.  We affirm the dismissal of the claim against Staudinger.

## C. Claims Against Public Officials

Counce also challenges the district court's grant of summary judgment to the public officials on qualified immunity grounds for his claims of excessive force and deliberate indifference to his serious medical needs.  Embedded within this challenge are complaints about the way the district court handled discovery matters relating to the dash cam videos that recorded his traffic stop.  Here, too, we agree with the district court's approach.

"Qualified immunity protects public officials from individual liability in a § 1983 action unless the officials violated clearly established constitutional rights of which a reasonable person would have known." *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996) (internal quotation marks and alterations omitted).  When a defendant pleads a qualified immunity defense, the "plaintiff initially bears a heavy two-part burden." *Id.*  First, he must show "that the defendant's actions violated a constitutional or statutory right." *Id.* (internal quotation marks omitted).  And second, he must show "that the right allegedly violated was clearly established at the time of the conduct at issue." *Id.* (internal quotation marks and alterations omitted).

After delineating the uncontroverted facts and resolving any controverted facts in Counce's favor, the district court conducted a thoughtful, detailed analysis as to why each individual state actor was entitled to qualified immunity.  Focusing on the first prong, the district court found that the KHP troopers did not violate Counce's

9

constitutional rights. R., Vol. III at 295. The troopers did not use excessive force under the circumstances (even by using a Taser), did not fail to intervene to protect him from the bystanders, and did not interfere with his emergency medical treatment. *Id.* at 281-91. Furthermore, the handcuffs did not cause an actual injury, and Counce did not show that a reasonable jury could find the troopers were deliberately indifferent to his medical needs and emotional distress. *Id.* at 291-92. In reaching these conclusions, the district court frequently referenced the dash cam evidence.

Likewise, the district court found that the officials from the sheriff's office were not indifferent to Counce's medical needs during the booking process or his incarceration at the county jail. *Id.* at 292-95. To support this conclusion, it highlighted Counce's own failure to answer routine medical questions on the booking form. *Id.* at 293. It also summarized the medical treatment he received from a certified physician's assistant, former defendant Shawn McGowan, in response to his six medical requests. *Id.* at 277-79, 293-94.

We review de novo the district court's qualified immunity determination at the summary judgment stage. *Lee v. Tucker*, 904 F.3d 1145, 1149 (10th Cir. 2018). We agree with the district court's reasoning and affirm its summary judgment ruling.

Turning to the related discovery issues, it is clear from the record that Counce conducted ample discovery during this protracted litigation. He seems to believe that additional or unmodified dash cam videos exist, which have not been produced; however, the district court unequivocally determined that "plaintiff has been provided with all relevant discovery that is in the possession of defendants," R., Vol.

10

III at 105. In any event, discovery issues are "entrusted to the sound discretion of the trial courts." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017) (internal quotation marks omitted). Moreover, to the extent the district court did limit discovery to some degree due to the state actors' assertion of qualified immunity, that practice is consistent with well-established guidelines. The Supreme Court has emphasized that qualified immunity affords broad protection to public officials, giving them "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such *pretrial* matters as discovery . . . , as '[i]nquiries of this kind can be peculiarly disruptive of effective government.'" *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (alterations in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982)).

**D. Remaining Issues on Appeal**

Counce raises a few other issues as well. In Issue 3, he summarily challenges the dismissal of the excessive force claims against the two bystanders who helped to subdue him, which he now recharacterizes as failure-to-intervene claims (presumably to skirt the deficiency that the bystanders themselves are not state actors). In Issue 4, he contests the dismissal of his claim for denial of access to the courts, without explaining how he states a viable claim or refuting the district court's finding that he was not prejudiced by the jail officials' purported actions. And in Issue 7, he continues his quest to use FOIA as a supplement to discovery, posing the question, "May a requester involved in ongoing litigation use as a collateral method of

11

discovery the FOIA?" Aplt. Opening Br. at 3-O. He then asks the Court to reverse

the Executive Branch's dismissal of his FOIA request. Aplt. Reply Br. at 12.

The briefing on these issues is wholly inadequate under Federal Rule of

Appellate Procedure 28(a)(8), so we decline to consider them. *See Bronson v.*

*Swensen*, 500 F.3d 1099, 1104-05 (10th Cir. 2007) ("[W]e routinely have declined to

consider arguments that are not raised, or are inadequately presented, in an

appellant's opening brief. . . . [C]ursory statements, without supporting analysis and

case law, fail to constitute the kind of briefing that is necessary to avoid application

of the forfeiture doctrine.").

### III.    Conclusion

We affirm the district court's dismissal of Counce's claims.

His "Motion Requesting the Tenth Circuit Court of Appeals to Take Judicial

Notice of Modifications to KHP Defendants' Dashcam Video Recordings Discovered

on Troopers Wolting, Evinger, and Arnolds' Dashcams in Exhibits F, G, and H" is

denied as moot. That motion asks the Court to order Defendants to turn over

additional dashcam recordings and to obtain information about why the dashcam

recordings that have been produced were modified. But even if additional or

12

unmodified dash cam videos did exist, Counce fails to show their existence would affect our analysis.

                                        Entered for the Court


                                        Allison H. Eid
                                        Circuit Judge