[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-13803
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 27, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-02870-CV-TWT-1

JAMIL A. AL-AMIN,

Plaintiff-Appellant,

versus

JAMES E. DONALD,
HUGH SMITH,
FRED BROWN,
S. DUPREE,
C. MCCOWAN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 27, 2006)**

Before TJOFLAT, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Jamil A. Al-Amin appeals the district court's grant of summary judgment to James Donald, Commissioner of the Georgia Department of Corrections, and his co-defendants, officials in the Georgia State Prison system, on Al-Amin's 42 U.S.C. § 1983 claim that his due process rights were violated. We affirm.

Al-Amin contends that the district court improperly determined that he did not have a liberty interest in freedom from confinement in administrative segregation at the Georgia State Prison ("GSP") in Reidsville. He argues that the court disregarded the existence of material issues of fact concerning the conditions of his confinement and that these factual issues precluded summary judgment. He also contends that the district court improperly failed to consider his claim alleging violations of his First Amendment right of free exercise of religion.

## I.

Al-Amin was convicted of murdering one deputy sheriff and wounding another in Fulton County, Georgia and was sentenced to life imprisonment without parole. He entered GSP on March 21, 2002 and was confined in administrative segregation, which is a non-disciplinary classification that prevents an inmate's contact with the general population of the prison.

Al-Amin was transferred to the Fulton County Jail on December 11, 2002 for post-trial proceedings. In March 2003 while he was housed at the Fulton County jail, an incident occurred that led jail officials to believe that Al-Amin had participated in an escape attempt. Following that incident, the Georgia Superior Court of Fulton County granted the state's motion to transfer Al-Amin from Fulton County Jail back to GSP. Although the court did not make a determination that Al-Amin actually had been involved in an escape attempt, it concluded that Fulton County Jail personnel reasonably believed that Al-Amin had participated in the attempt. Therefore, the court granted the state's request to transfer Al-Amin to GSP, and he returned to GSP on April 4, 2003. At that time, he was reassigned to administrative segregation.

When Al-Amin returned to GSP in April 2003, GSP officials also concluded that there was evidence of Al-Amin's participation in an escape attempt at the Fulton County Jail. Based on this conclusion as well as the notoriety of the case and the prisoner, "it was deemed necessary to make him a high maximum security inmate." Aff. of Garry Harden, Counselor for the Classifications Committee, at 3. On GSP's Security Reclassification Form dated April 9, 2003, "escapes" were listed as zero and "disciplinary reports" were listed as zero; however, the form stated that Al-Amin was disapproved for reclassification because he was an escape risk.

Al-Amin has been confined to administrative segregation for his entire time in GSP, which now amounts to an aggregate period of approximately three years. The reasons given for his classification are the notoriety of Al-Amin's case, the escape risk he poses, and "concerns due to his widely-known expressions of belief." Defendants' Stmt. of Material Facts at 3. He is considered a threat to the security of the prison because "he has leadership qualities and a history of opposing the government and supporting violence." Aff. of Hugh Smith, GSP Warden, at 8.

Al-Amin has remained confined to administrative segregation because prison officials have continued to view him as an escape risk and a threat to prison security. Warden Smith stated:

> With Mr. Al-Amin's background as a leader of anti-government causes, a killer of a law enforcement officer and the fact that Mr. Al-Amin has many followers, both in and out of prison, I have continued to believe that if Mr. Al-Amin were to be placed in the general population of [GSP], which houses many of the most violent convicted felons in Georgia, it would create a threat to the security of the prison.

Aff. of Hugh Smith, GSP Warden, at 8.

## II.

Al-Amin initially filed a grievance form challenging his housing classification, and his request to be removed from administrative segregation was denied. On September 22, 2003, proceeding pro se, Al-Amin filed a complaint

4

against certain Georgia State Prison officials pursuant to 42 U.S.C. § 1983. He alleged that his due process rights were violated when he was originally confined to administrative segregation without a hearing and when GSP officials did not inform him of his appeal rights a year later upon reassigning him to administrative segregation and classifying him as a "high–high max" security inmate. He also indicated in his complaint that being kept in isolation interfered with the exercise of his religion.[1] He sought monetary damages for health and psychological injury and equitable relief, asking the court to order his transfer to another prison, his removal from administrative segregation, and the removal of the defendants from their positions as officials in the GSP system.

## A.

The district court first conducted a frivolity review as required by 28 U.S.C. § 1915A. A federal court must conduct an initial screening of a prisoner complaint to determine whether it "(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A claim is frivolous when, on the face of the complaint, the factual allegations are "clearly

---

[1] In the "Relief" section of the complaint, among other types of relief he was seeking, Al-Amin made the following request: "That I be allowed to fulfill my religious rights by being removed from isolation." Complaint at ¶ 5. His complaint did not expressly specify any constraints on his religious practice. See id. at ¶ 4.

baseless," or the legal allegations are "indisputably meritless." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (citation and quotation marks omitted). A complaint may be dismissed for failure to state a claim when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Brower v. County of Inyo, 489 U.S. 593, 598, 109 S. Ct. 1378, 1382 (1989).

At the time the court conducted this frivolity review, Al-Amin had been in administrative segregation at GSP for an aggregate time of thirteen months. The court concluded that—particularly based on the length of time in administrative segregation, the uncertainty about the type of hearing conducted during the classification process, and Al-Amin's pro se status—Al-Amin's due process claim was not "clearly baseless" or "indisputably meritless." Carroll, 984 F.2d at 393. Therefore, the court allowed Al-Amin's claim to proceed.

**B.**

Subsequently, the district court granted the defendants' motion for summary judgment. In doing so, the court found that administrative segregation at GSP is not part of the disciplinary segregation unit and that GSP officials place inmates in administrative segregation when their presence in the general population would pose a threat to their own welfare or that of other inmates or the staff or would cause major disruption to the secure and orderly operation of the prison.

6

The court found that inmates in administrative segregation "are treated similarly" to those in the general population. District Court Opinion and Order at 3. Inmates in administrative segregation are allowed to take their personal possessions with them, and their cells are equipped and furnished in a manner similar to those of inmates in the general population. They are given the same opportunities for personal hygiene, except that they may be limited to showering and shaving three times per week. They have the same visitation and correspondence privileges as general population inmates. They get the same food in the same quantities as the general population. The court determined that the primary differences are that inmates in administrative segregation live in single cells, they do not go to the dining room with the general population, and they are entitled to five hours of exercise per week rather than the seven hours available to general population inmates.

At the time the court granted summary judgment in favor of the defendants, Al-Amin had been in administrative segregation for an aggregate of thirty months. The court determined, however, that because the conditions of his confinement were basically equivalent to those of the general population, Al-Amin did not have a liberty interest in freedom from administrative segregation, despite the lengthy duration of his confinement.

Furthermore, the court concluded that even if Al-Amin did have a liberty

7

interest in freedom from administrative segregation, he had received all the process he was due. The court found that GSP had followed the process for administrative segregation set forth in the Georgia Department of Corrections' Standard Operating Procedures. It made the following findings concerning the process Al-Amin received at GSP:

> The Plaintiff [Al-Amin] was originally brought to GSP on March 21, 2002, and a segregation hearing was held on March 26, 2002. (Harden Aff., Ex. A; Smith Aff. ¶ 5.) He was placed in administrative segregation based on his status as an "Admissions and Orientation inmate." (Id.) The Plaintiff was provided with an explanation for the placement and given an opportunity to express his views. (Harden Aff., Ex. A.) Approximately one week later, on April 4, 2002, a special management hearing was held. At this time, the Plaintiff was placed in involuntary administrative custody, for the safe operation of the prison, for a period of observation and adjustment due to the publicity associated with his case. (Harden Aff. ¶ 5, Ex. B.) Once again, the Plaintiff was notified of the reasons behind his confinement and he expressed his dissatisfaction with the decision. (Id., Ex. B.) The Plaintiff remained in administrative segregation until September 29, 2002, when he was transferred from GSP. He returned to GSP on April 4, 2003. On April 9, 2003, a special management hearing was held, and the Plaintiff was classified as a high maximum security inmate because of the notoriety of his case and because he was deemed an escape risk, based on an alleged escape attempt from the Fulton County Jail. (Id. ¶ 5, Ex. C.) Accordingly, he was once again placed in administrative segregation. The Plaintiff was notified of this decision and he had the opportunity to state that he was not in agreement with the decision. (Id. ¶ 6, Ex. C.) Finally, the Plaintiff has received an administrative hearing review of his status every 30 days. (Id. ¶¶ 7–8; see id., Ex. D.) After each classification and placement determination, the Plaintiff has had the right to appeal to the Warden. (Id. ¶¶ 7–8.)

Al-Amin v. Wetherington, No. 1:03-CV-2870 at 13–14 (N.D. Ga. June 3, 2005).

8

The court concluded that the prison afforded Al-Amin all that was procedurally required for placement in administrative segregation. Id. Based on these findings, the court granted the defendants' motion for summary judgment.

**III.**

We review a district court's order granting summary judgment de novo, and we resolve all issues of material fact in favor of the nonmoving party. Cuvillier v. Rockdale County, 390 F.3d 1336, 1338 (11th Cir. 2004).

**A.**

The threshold issue in the present case is whether Al-Amin has a liberty interest in freedom from confinement in administrative segregation. For reasons we will discuss, we conclude that he does have a not liberty interest under the particular facts of this case. That conclusion makes it unnecessary for us to determine whether GSP's procedures for confining Al-Amin to administrative segregation and for keeping him confined there provided Al-Amin with due process.

A liberty interest protected by the Fourteenth Amendment may arise from the Due Process Clause itself, or state law may create a liberty interest. See Sandin v. Conner, 515 U.S. 472, 483–84, 115 S. Ct. 2293, 2300 (1995). The Supreme Court has given us some examples of cases in the prison context where the Due Process Clause protects a liberty interest regardless of the

9

protections state law provides or fails to provide.  See id.  One of those cases involved an inmate's involuntary transfer to a mental hospital, and the other involved the involuntary administration of pyschotropic drugs to an inmate.  See id. (citations omitted).   In these situations, the conditions of confinement "exceed[ed] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."  Id. at 484,  115 S. Ct. at 2300.

Confinement to administrative segregation, under conditions substantially similar to those experienced by the general population of the prison, does not implicate liberty interests in the way that involuntary transfer to a mental hospital or involuntary administration of psychotropic drugs does.  See id.  Although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying or penal system."  Id. at 485, 115 S. Ct. at 2301 (citations, quotation marks, and alteration omitted).  Under certain circumstances, administrative segregation is a necessary limitation of privileges and rights that incarceration demands.

The extended duration of Al-Amin's confinement in administrative segregation does distinguish the facts of his case from some other disciplinary or administrative segregation situations in which it was held that no liberty interest

existed.  See Sandin, 515 U.S. at 486, 115 S. Ct. at 2301 (holding that the plaintiff's disciplinary, segregated confinement for thirty days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); Rodgers v. Singletary, 142 F.3d 1252 (11th Cir. 1998) (holding that no liberty interest existed when plaintiff was kept in administrative confinement for two months pending the resolution of criminal charges arising from an altercation with a corrections officer); see also Pichardo v. Kinker, 73 F.3d 612 (5th Cir. 1996) (holding that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim").  Although Al-Amin has been confined in administrative segregation for a long time, because this confinement has occurred under conditions substantially similar to those experienced by the general population of GSP, his confinement in administrative segregation does not unexpectedly exceed his sentence in a manner that would evoke the protections the Due Process Clause.  See Sandin,  515 U.S. at 484, 115 S. Ct. at 2300.

Addressing the issue of an inmate's confinement in administrative segregation, the Supreme Court has noted that "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison

sentence." Hewitt v. Helms, 459 U.S. 460, 468, 103 S. Ct. 864, 869 (1983), modified on other grounds by Sandin, 515 U.S. 472, 481, 115 S. Ct. 2293, 2299 (concluding that the focus of the liberty interest inquiry should be on the nature of the deprivation rather than on the language of the state prison regulation). The Court has also cautioned, however, that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates." Id. at 477 n.9, 103 S. Ct. at 874 n.9.

The record establishes that periodic review was conducted in Al-Amin's case. In his affidavit, GSP Counselor Garry Harden, who serves on the Institutional Classifications Committee, stated that Al-Amin was placed on administrative segregation because of the notoriety of his case and because he is an escape risk. Harden Affidavit at ¶ 8. Harden also stated in his affidavit that Al-Amin's status is "subject to review every month in a hearing" and that after a decision is made in the status review, Al-Amin can "appeal the decision of the classifications committee to the warden pursuant to policy." Id. Since periodic review has been conducted, Al-Amin's confinement does not appear to be a pretext for indefinite confinement, which might give rise to a liberty interest.

Because we conclude that the Due Process Clause itself does not give rise to

12

a liberty interest in Al-Amin's case, the next issue we must resolve is whether state law has created a liberty interest. In regard to state-created liberty interests in the prison context, the Supreme Court has concluded that "these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484, 115 S. Ct. at 2300.

To determine if a state-created liberty interest exists, we must focus on the nature of the deprivation. See id. at 481, 115 S. Ct. at 2299. Al-Amin has a liberty interest only if his confinement in GSP's administrative segregation for a period of approximately three years constitutes an "atypical and significant hardship" on him "in relation to the ordinary incidents of prison life." Id. at 484, 115 S. Ct. at 2300. Based on the substantial similarity between the privileges and conditions of life in the general population of GSP in comparison to conditions in administrative segregation, the district court concluded that confinement in administrative segregation did not constitute an atypical and significant hardship. We agree.

The briefs and the record establish that no genuine issue of material fact exists concerning the equivalence of the conditions of Al-Amin's administrative segregation confinement in comparison to the conditions experienced by the general population of GSP. Moreover, Al-Amin receives periodic reviews of his

13

classification status in accordance with the Georgia Department of Corrections' Standard Operating Procedures. Under these circumstances, Al-Amin's confinement in administrative segregation does not constitute an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." See id. at 484, 115 S. Ct. at 2300.

**B.**

On the issue of whether a First Amendment violation occurred as a result of his confinement in administrative segregation, Al-Amin's initial brief does not explain how his confinement affects his First Amendment free exercise of religion in any way. The defendants point out this deficiency in their brief in response, and Al-Amin filed no reply brief. Al-Amin gives us little to go on except bare assertions in his brief that his confinement in administrative segregation reflects GSP officials' "disapproval of his status as a practicing Muslim and . . . speculation and exaggerated fears based on his religious affiliation and practice." Brief of Appellant at 22. He contends that the district court erred in failing to consider his claim that his First Amendment free exercise rights were violated.

Al-Amin's complaint stated the following request for relief: "That I be allowed to fulfill my religious rights by being removed from isolation." Complaint at ¶ 5. He did not expressly state a free exercise claim and did not refer to any specific constraints on his religious practice in his complaint. See id.

14

at ¶ 4. We take note of the fact that at the summary judgment stage of this case, Al-Amin was proceeding pro se. Pro se pleadings are interpreted liberally, but even a pro se plaintiff must allege some factual basis for his claim. See Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001). A defendant is not required to "infer all possible claims that could arise out of the facts set forth in the complaint." Gilmour v. Gates, McDonald, & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).

Al-Amin did not amend his complaint to include a cognizable free exercise claim. He merely stated in his opposition to the defendants' motion for summary judgment that GSP officials' reasons for keeping him confined in administrative segregation were a pretext for discrimination based on religion and that GSP officials were violating the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, et seq.

"A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Gilmour, 382 F.3d at 1315. The district court did not err by not addressing Al-Amin's wish to "fulfill [his] religious rights" as stated in his complaint. His request for relief was (and still is) vague and ambiguous, and the complaint and his other submissions provide no factual or legal basis for a claim that his First Amendment rights were violated. See Jones, 279 F.3d at 946–47.

Therefore, we conclude that the district court properly granted summary judgment in favor of the defendants.

AFFIRMED.