**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 20, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JANOS TOEVS,

        Plaintiff-Appellant,

v.

LARRY REID; SUSAN JONES;
CASE MANAGER J. GLIDEWELL;
CASE MANAGER KRISTI MOORE,

        Defendants-Appellees.

No. 10-1535

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:06-CV-01620-CBS-KMT)**

---

Submitted on the briefs:[*]

Janos Toevs, Plaintiff-Appellant, Pro se.

Andrew M. Katarikawe, Senior Assistant Attorney General, Civil Litigation and Employment Law Section, John W. Suthers, Attorney General, Denver, Colorado for Defendants-Appellees.

---

Before **MATHESON**, **McKAY**, and **EBEL**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**EBEL**, Circuit Judge.

Janos Toevs, proceeding pro se, appeals the district court's grant of summary judgment to defendants in his 42 U.S.C. § 1983 civil-rights suit. Mr. Toevs argues that the court erred in granting qualified immunity to defendants on his claim that they denied him meaningful periodic reviews during his lengthy confinement in administrative segregation. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm, although on different grounds than the district court.

The district court concluded that Mr. Toevs failed to demonstrate that defendants violated his constitutional rights. We disagree. Based on the record before this court, we conclude that defendants did not provide Mr. Toevs with the meaningful periodic reviews to which he was constitutionally entitled because the substantive reasons why Mr. Toevs was either graduated to a higher level of the Quality of Life Level Program or denied graduation to a higher level were not shared with Mr. Toevs. Without providing any meaningful guidance to Mr. Toevs of how he was progressing to exit from administrative confinement or when he might anticipate being returned to the general prison population, defendants violated his constitutional rights. Nevertheless, because at the time, it would not have been apparent to defendants that the review process would not be considered meaningful, we conclude that defendants are entitled to qualified immunity and

-2-

judgment in their favor.

## I.    BACKGROUND

Mr. Toevs's lawsuit concerns the Colorado prison system's Quality of Life Level Program (QLLP), which is described in Operational Memorandum (OM) 650-100.  The QLLP, which is employed at Colorado State Penitentiary (CSP) and Centennial Correctional Facility (CCF), is "a stratified quality of life program based on increased levels of privileges for demonstrated appropriate offender behavior and program compliance."  OM 650-100 § I, Aplt. App. at 610.  The program consists of six levels.  Level 1 has the most restrictive conditions, and each successive level offers the inmate more privileges.

Levels 1 through 3 are classified as administrative segregation. Accordingly, they are subject to the provisions of Administrative Regulation (AR) 600-02, which governs placement in administrative segregation.  AR 600-02 provides for periodic reviews of segregation status.  Levels 4 through 6 are classified as close custody.  AR 600-02 does not cover these levels, and defendants concede that there is no review process applicable to them.  After completing QLLP Level 6, an inmate is eligible to be transferred to the general prison population.  If an inmate spends the minimum amount of time at each level, he will be in the QLLP for thirteen months and seven days.  There is no maximum amount of time for placement in the QLLP.

Mr. Toevs was placed in the QLLP on March 4, 2002, after attempting to

escape. By September 2005, he had reached Level 6, but due to poor behavior he was regressed to Level 1. He again began to progress through the program, achieving Level 1 on October 7, 2005; Level 2 on October 13, 2005; Level 3 in either December 2005 or January 2006; and Level 4 on October 15, 2007. On January 31, 2009, Mr. Toevs completed Level 6 and graduated from the QLLP. In March 2009, he rejoined the general prison population.

In the relevant pleading, the Third Amended Complaint, Mr. Toevs complained that during his placement in the QLLP from 2005 to 2009 he was deprived of a liberty interest without due process.[1] Specifically, he alleged that Jean Glidewell (his case manager from September 2005 to February 2006) and Kristi Moore (his case manager from March to June 2006) denied him his right to a meaningful periodic review of his confinement in administrative segregation because the reviews they gave him were perfunctory, meaningless, and all said the same thing. With regard to Larry Reid (the warden at CSP/CCF from September 1, 2002, until October 1, 2007) and Susan Jones (Mr. Reid's successor as CSP/CCF warden), he complained that their enforcement of OM 650-100 mooted any possible due process that could have been afforded by AR 600-02. He further alleged that OM 650-100 rendered any reviews meaningless because

---

[1] Although Mr. Toevs initially was placed in the QLLP in March 2002, the district court held that any claims for periods before August 2004 were barred by the applicable statute of limitations. Thus, the Third Amended Complaint focused on events from 2005 to 2009. Mr. Toevs does not appeal this ruling.

-4-

they could not result in his immediate release from the QLLP. And finally, he complained that OM 650-100 did not provide for reviews when he was in QLLP Levels 4 through 6 in February to September 2005 and October 2007 to January 2009. All of his claims were asserted against defendants in their individual capacities. He requested compensatory and punitive damages and declaratory relief.

The parties consented to have the case heard by a magistrate judge. *See* 28 U.S.C. § 636(c). In evaluating the parties' cross-motions for summary judgment, the district court held defendants were entitled to qualified immunity. It held that the review process was constitutionally adequate, and thus Mr. Toevs had failed to establish that Ms. Glidewell and Ms. Moore deprived him of a constitutional right. It also held that there was no showing of Mr. Reid's and Ms. Jones's personal participation in the alleged constitutional violations; there was no evidence that they participated in any of the reviews or that they had any knowledge of his circumstances. Therefore, the court concluded that Mr. Toevs failed to establish that Mr. Reid and Ms. Jones deprived him of a constitutional right. The court further determined that the allegations that OM 650-100 mooted any protections provided by AR 600-02 were conclusory. And, the court concluded, its decision that the reviews were constitutionally adequate rebutted Mr. Toevs's argument that, because they could not have secured his immediate

release from the QLLP, the reviews were meaningless.[2]  Mr. Toevs appeals.

## II.    ANALYSIS

Mr. Toevs argues that the district court failed to give his filings the liberal construction due a pro se litigant.  He believes the court missed the focal points of his argument:  (1) that his extended placement in the QLLP violated his right to due process because at Levels 1 through 3 he did not receive any *meaningful* reviews, by which he means reviews that could result in his immediate release to the general population; and (2) at Levels 4 through 6 he did not receive any reviews at all.  In part, he attributes the court's errors to its denial of his requests for appointed counsel.  Without counsel, he asserts, he was unable to frame his arguments or conduct discovery effectively.

### A.    Standard of Review and Qualified Immunity

We review the district court's grant of summary judgment de novo.  *See Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).  Because judgment in this case was based on qualified immunity, however, "the summary judgment standards are subject to a somewhat different analysis from other summary judgment rulings."  *Id.*  "The doctrine of qualified immunity shields government

---

[2]    The district court concluded that it need not consider defendants' argument that Mr. Toevs had failed to exhaust his administrative remedies.  It further stated that, if it were to consider the issue, there may be a genuine issue of material fact as to whether there was an administrative appeal process available to Mr. Toevs. Defendants do not argue administrative exhaustion on appeal, so we do not consider the issue.

officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, to avoid judgment for the defendant based on qualified immunity, "the plaintiff must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Steffey*, 461 F.3d at 1221 (quotation omitted); *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815-16 (2009). We may address these questions in whatever order is appropriate under the circumstances. *Pearson*, 129 S. Ct. at 818. We view the facts in the light most favorable to the plaintiff, Mr. Toevs. *See Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J*, 464 F.3d 1182, 1188 (10th Cir. 2006).

### B. Due Process Claim

#### 1. Violation of a Constitutional Right

We turn first to the question of whether defendants violated a specific constitutional right. Mr. Toevs alleges a violation of his right to due process.

##### a. Existence of a Liberty Interest

The first issue in the due-process context is whether the plaintiff has established a protected interest (in this case a liberty interest). *See Steffey*, 461 F.3d at 1221; *Kirkland*, 464 F.3d at 1189. The Due Process Clause "itself

does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In the prison context, state regulations can create protected liberty interests, but such interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted). The district court "determined that because Mr. Toevs alleged placement in the QLLP for a lengthy period of time without meaningful periodic reviews, he may state a claim for atypical and significant restraint deserving due process protections." *Toevs v. Reid*, No. 06-cv-01620-CBS-KMT, 2010 WL 4388191, at *5 (D. Colo. Oct. 28, 2010). On appeal, defendants do not take issue with the court's conclusion that Mr. Toevs's seven-year placement in the QLLP could be sufficiently atypical and significant to create a liberty interest. We determine that Mr. Toevs adequately established a liberty interest.

In *Estate of DiMarco v. Wyoming Department of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007), we identified certain relevant, albeit non-dispositive, factors in this liberty-interest inquiry: "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of

-8-

confinement . . .; and (4) the placement is indeterminate." "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Id.*

Factors one and three work against the existence of a liberty interest. The segregation in this case certainly relates to and furthers a legitimate penological interest (Mr. Toevs originally was committed to the QLLP because of an escape attempt, and he was regressed to QLLP Level 1 in September 2005 due to behavioral problems). Further, given that he is serving a life sentence, the placement did not increase the duration of his confinement.

As for factor two, it is not entirely clear whether the conditions of placement were extreme, but at a minimum there is a genuine issue of material fact regarding the question. Mr. Toevs provided evidence that the conditions at all levels of the QLLP were similar to the conditions described in *Wilkinson*, 545 U.S. at 214-16, where the Supreme Court concluded that assignment to Ohio's supermax facility was an atypical and significant hardship, *see id.* at 223-24. Defendants denied the accuracy of Mr. Toevs's description, but they provided little specific evidence of his actual conditions of confinement. Instead, they generally referred to the QLLP's general provisions for conditions of confinement, which are set forth in OM 650-100 § IV.A. But this section does not address several of the conditions alleged by Mr. Toevs, including the amount of time spent in his solitary cell, the provision of solid metal cell doors with metal

strips on the sides and bottom to prevent communication, and the requirement that he eat all his meals in his cell. Further, OM 650-100 § IV.A provides that the listed conditions "may be adjusted and/or modified based on offender behavior . . .," and specific portions of the policy also state that the conditions described therein may be adjusted. Aplt. App. at 611. Thus, OM 650-100 § IV.A may or may not be an accurate description of Mr. Toevs's actual conditions of confinement.

In these circumstances, we consider the fourth *DiMarco* factor to be determinative. Placement in the QLLP is indefinite. Although there is a minimum time to complete the program, there is no maximum, and there is no restriction on how many times a prisoner may be regressed to lower levels. When Mr. Toevs was placed in the QLLP he had no knowledge of any end date, and as it turned out, he was in the QLLP for nearly seven years. It appears from the record that the average length of placement in the QLLP program is twenty-nine months, which is much less than Mr. Toevs's placement.

We conclude that Mr. Toevs's indefinite placement that actually lasted for years, in the type of conditions he alleged, established a protected liberty interest. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) ("The district court abused its discretion in concluding that there was no *arguable* basis that a three-year period of administrative segregation—during which time Fogle was confined to his cell for all but five hours each week and denied access to any

-10-

outdoor recreation—is not 'atypical.'"); *see also Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) ("Based on this record, we have no difficulty concluding that eight years in administrative custody, with no prospect of immediate release in the near future, is 'atypical' in relation to the ordinary incidents of prison life[.]"); *McClary v. Coughlin*, 87 F. Supp. 2d 205, 208 n.2, 209 (W.D.N.Y. 2000) (finding that four-year placement in administrative segregation, in the same harsh conditions as punitive segregation, created a liberty interest).

### b. Adequacy of Process Afforded Mr. Toevs

#### 1. Mr. Toevs had a right to meaningful periodic review while he was confined to the QLLP.

Because Mr. Toevs has established a liberty interest, we proceed to the next issue, which focuses on the process that was afforded to him. *See Wilkinson*, 545 U.S. at 224; *Kirkland*, 464 F.3d at 1189. Mr. Toevs does not contest the adequacy of the process by which he initially was committed to the QLLP or by which he was regressed to Level 1 in September 2005. Rather, he argues that while he was in the QLLP from 2005 to 2009, he was denied his right to a meaningful periodic review of his status.

The periodic-review requirement stems from *Hewitt v. Helms*, 459 U.S. 460 (1983), *abrogated in part on other grounds by Sandin*, 515 U.S. at 483. In *Hewitt*, the Supreme Court stated, "administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in

-11-

some sort of periodic review of the confinement of such inmates." *Id.* at 477 n.9.

The review need not be extensive, as the Court continued:

> This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner—which will have been ascertained when determining to confine the inmate to administrative segregation—and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner.

*Id.* But the review must be meaningful; it cannot be a sham or a pretext. *See id.*;

*Sourbeer v. Robinson*, 791 F.2d 1094, 1101 (3d Cir. 1986); *McClary*,

87 F. Supp. 2d at 214.

Mr. Toevs contends that a meaningful review must be one that can result in

his immediate release from the QLLP to the general population. In light of the

circumstances presented here, we disagree. The cases Mr. Toevs consults to form

his definition of a meaningful review did not involve prisoners who were in

stratified incentive programs such as the QLLP. *See Mackey v. Dyke*, 29 F.3d

1086 (6th Cir. 1994); *Kelly v. Brewer*, 525 F.2d 394 (8th Cir. 1975). In those

cases, there were only two choices; either the prisoner was in administrative

segregation or he was in the general population. Naturally, then, when the only

alternative to segregation was the general population, the courts referred to a

review that was capable of releasing the inmate into the general population. But

here there were six levels within the QLLP, and Mr. Toevs had no right to rejoin

-12-

the general population before he completed all six levels. Therefore, he did not have a right to an interim review capable of prematurely terminating his participation in the QLLP at any time before the completion of the sixth level.

"Unlike punitive segregation, including punitive isolation which is imposed by way of punishment for past misconduct, administrative segregation is not punitive and it looks to the present and the future rather than to the past." *Kelly*, 525 F.2d at 399. Thus, a "meaningful" review is one that evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to segregation, determines, without preconception, whether that placement remains warranted. As one scholar has put it, "Hewitt's requirement of a meaningful periodic review presumes that the reviewing entity considers whether the prisoner's conduct during the period since the most recent security review warrants reclassification. Consideration of behavior is an integral component of a fair and meaningful hearing." Jules Lobel, *Prolonged Solitary Confinement and the Constitution*, 11 U. Pa. J. of Const. L. 115, 126-27 (2008). In the context of a stratified incentive program such as the QLLP, the review would consider whether the prisoner is eligible to move to the next level or, if the prisoner already is at the highest level, if he or she is eligible to graduate from the program.

Further, "what would be required for an intelligent and meaningful review of the case of one inmate might not be required in the case of another." *Kelly*,

525 F.2d at 400. Where, as here, the goal of the placement is behavior modification, the review should provide a guide for future behavior (i.e., it should give the prisoner some idea of the requirements for, and his progress toward, more favorable placement). *See Wilkinson*, 545 U.S. at 226 (noting that Ohio's requirement of a statement of reasons "serves as a guide for future behavior"); *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 15 (1979) (noting that prisoners denied parole were told the reason "as a guide to the inmate for his future behavior"). "The statement of reasons must explain what the prisoner must do to work [his] way out of solitary confinement. Otherwise, the statement would not serve the function of providing the prisoner with a 'guide for future behavior.'" Lobel, 11 U. Pa. J. of Const. L. at 127.

In *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Supreme Court instructed the lower courts to examine "the probable value, if any, of additional or substitute procedural safeguards" and "the fiscal and administrative burdens [on the government] that the additional or substitute procedural requirement would entail." The value of requiring an explicit advisement of progress through the QLLP program is high, in that it promotes the ultimate goal of a behavior-modification program. Moreover, the administrative burden on the government should be relatively low, as the QLLP already requires officials to track prisoners' progress and evaluate their prospects for promotion to the next level.

A meaningful review, however, does not require giving the inmate an opportunity to submit additional testimony or evidence. *See Hewitt*, 459 U.S. at 477 n.9. And if the relevant circumstances truly have not changed, the fact that the review form says nothing different will not preclude a review from being considered meaningful. *See Edmonson v. Coughlin*, 21 F. Supp. 2d 242, 253 (W.D.N.Y. 1998).

> **2.  Mr. Toevs did not receive meaningful periodic reviews between 2005 and 2009.**

### A.  Levels 1 through 3

Having determined the requirements for a meaningful periodic review, we must determine whether the reviews given to Mr. Toevs at Levels 1, 2, and 3 starting in 2005 meet this standard. It is a close question. As Mr. Toevs complains, the review forms largely contain the same information, with occasional updates. But defendants contend that the review forms reflect only part of the review process.

Ms. Moore and Ms. Glidewell submitted affidavits stating that "[a]n inmate's periodic review is recorded on a form prescribed by AR 600-02. The contents of this form do not reflect all factors considered in the inmate's review, but only document significant benchmarks in the inmate's progress through the

-15-

QLLP." Aplt. App. 607; 649.[3]

> Inmates' periodic reviews are initiated by case managers, and consist
> of a review of information obtained from the case manager's contacts
> with the inmate during the review period, a review of Chronlog
> reports, chrons entered by housing staff, and incident reports, if any.
> The reviews also consider whether the reasons for the inmate's initial
> placement in administrative segregation still exist. If the case
> manager determines from a review that the inmate has met all
> expectations, he or she recommends a progression to the next level in
> the QLLP. If not, he or she recommends no change.

*Id.* at 608; *see also id.* at 650.

This evidence indicates that the reviews focused on appropriate factors, and we likely would consider the process meaningful, but for one serious omission—the reviews never informed Mr. Toevs of the reasons why he was recommended for or denied progression, so that he would have a guide for his future behavior. For example, he spent twenty-one months at Level 3 (eighteen more than the minimum) before being promoted to Level 4. The QLLP specifies certain prerequisites for promotion to Level 4. During this time, however, his review forms never stated why he was being held at Level 3 or what he had to do to move to Level 4. While certain classes were recommended, there was no indication that they had to be completed before progression (and in fact, Mr. Toevs was progressed from Level 2 to Level 3 before he completed classes that were then being recommended). Accordingly, the reviews at Levels 1

---

[3]     Defendants initially submitted an unsigned affidavit for Ms. Glidewell, but later submitted a signed version.

through 3 were not meaningful.

## B.    Levels 4 through 6

Levels 4, 5, and 6 present an easier question, given defendants' concession that no reviews were conducted at these levels.[4]  They contend that reviews are not necessary because these levels are classified as "close custody" rather than "administrative segregation."  But the evidence of record, including Mr. Toevs's verified statement and defendants' interrogatory answers, indicates that the basic conditions of confinement remain the same for all QLLP levels.  Thus, we see no reason why Levels 4 through 6 would be exempt from *Hewitt*'s prescription of periodic review.  And without any reviews, it is impossible for prisoners to track their progress through the QLLP.  From this record, for example, it is impossible to determine when Mr. Toevs moved from Level 4 to Level 5 and from Level 5 to Level 6, why he was held at those levels for however long he was held there, and

---

[4]    It appears that Ms. Moore and Ms. Glidewell were no longer Mr. Toevs's case managers by the time he was promoted to Level 4.  Thus, any claim regarding the lack of review at Levels 4 through 6 implicates only Mr. Reid and Ms. Jones.

In a related argument, Mr. Reid and Ms. Jones argue that there is no evidence of any personal involvement by them in any deprivation of Mr. Toevs's rights.  The evidence belies this argument.  Mr. Toevs challenges the QLLP, which is established by OM 650-100.  Mr. Reid signed the copy of OM 650-100 in the appellate record, indicating that he adopted it.  He also was made aware of Mr. Toevs's circumstances by a letter in the summer of 2006.  Ms. Jones, as Mr. Reid's successor, apparently had the power to amend OM 650-100  had she chosen.  In addition, Ms. Jones signed at least one of Mr. Toevs's review forms.

how it was determined that he was eligible to graduate from the QLLP. Essentially, then, at Levels 4 through 6 prisoners are being held indefinitely, without review, in the same basic conditions as Levels 1 through 3, and defendants' only justification is that the custody level has a different name. In these circumstances, we have no hesitation in concluding that the failure to give Mr. Toevs any reviews at Levels 4, 5, and 6 violated his right to due process.

### 2. The law was not clearly established.

Even though Mr. Toevs did not receive meaningful periodic reviews, we conclude that defendants are entitled to judgment based on qualified immunity because it was not clearly established in 2005 through 2009 that the review process was inadequate. "Despite their participation in . . . constitutionally impermissible conduct, respondents may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow*, 457 U.S. at 818).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Walker v .City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006) (quotation omitted). It is not necessary, however, to find cases that are "fundamentally similar" or even "materially similar," because "officials can still

-18-

be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. The "salient question . . . is whether the state of the law [at the time of the actions] gave respondents fair warning that their [conduct] was unconstitutional." *Id.*

Since *Hewitt*, it has been clearly established that prisoners cannot be placed indefinitely in administrative segregation without receiving meaningful periodic reviews. 459 U.S. at 477 n.9. This court, however, has not previously interpreted "meaningful" to require officials to inform prisoners of the reasons for their continued placement, so as to provide a guide for future behavior. Moreover, this court has never considered the due-process implications of a stratified incentive program such as the QLLP. Accordingly, we cannot conclude that the state of the law from 2005 to 2009 gave defendants fair warning that the QLLP review process was not meaningful, or that the lack of reviews at QLLP Levels 4 through 6 was a due-process violation. And because the law was not clearly established, defendants are entitled to judgment based on qualified immunity.

## C.    Appointment of Counsel

"We review a district court's refusal to appoint counsel for an indigent prisoner in a civil case for an abuse of discretion." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004). "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Id.* (quotation omitted). The factors to be considered

include "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Id.*; *see also Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).

Mr. Toevs argues that he lost his case because he was not able to frame his arguments effectively and encountered problems in discovery that counsel would have been able to surmount. "While we do not quarrel with [his] assertion that having counsel appointed would have assisted him in presenting his strongest possible case," *Rucks*, 57 F.3d at 979, we do not conclude that the denial of counsel was an abuse of discretion. As the district court found, Mr. Toevs capably litigated his case. In fact, we compliment him on filing appellate briefs that clearly articulate his arguments and ably discuss the applicable precedents.[5] Our affirmance is not due to a poor presentation or an inadequate record, but because the law was not clearly established at the time of the events at issue.

## III.   CONCLUSION

Because the standards for meaningful periodic reviews during extended placement in a stratified incentive program involving confinement to administrative segregation were not previously clearly established in this circuit, defendants are entitled to qualified immunity, and the judgment of the district court is AFFIRMED.

---

[5]    Also, in a prior related appeal, Mr. Toevs was successful in challenging the district court's dismissal of his complaint. *See Toevs v. Reid*, 267 F. App'x 817 (10th Cir. 2008).