LOKEN, Circuit Judge,
dissenting.
I respectfully dissent from Parts II.A and II.B of the court’s opinion. The court errs in its uncritical reliance on Kelly v. Brewer, 525 F.2d 394 (8th Cir.1975), a panel decision substantially undermined, if not overruled, by later Supreme Court decisions. I would reverse the grant of nominal damages and direct entry of judgment in favor of the defendant prison officials.
I.
Sandin v. Conner, 515 U.S. 472, 485-86, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), established that David Williams’s due-process-protected liberty interest arose only because of the duration of his administrative segregation. The Supreme Court directly addressed this duration issue in Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983):
Of course, administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner — which will have been ascertained when determining to confine the inmate to administrative segregation — and on the officials’ general knowledge of prison conditions and tensions, which are singularly unsuited for ‘proof in any highly structured manner.
Paying little heed to this controlling law, the court errs in relying on Kelly for the following standards. First, the court errs in faulting defendants for the “undue weight accorded to past facts that we explicitly forbade in Kelly.” Op. at 1008. Imposing this requirement is contrary to the above-quoted footnote in Hewitt and to the Court’s extended discussion of the subjective task of assessing an inmate’s threat to prison security, 459 U.S. at 474, 103 S.Ct. 864. In this regard, the proper standard was applied by the Third Circuit in Shoats v. Horn, 213 F.3d 140, 146 (3d Cir.2000): recognizing that the issue is whether an inmate poses a continuing threat to prison security, the court held that continued administrative segregation may be based solely on past crimes “because predictions of likely future behavior based on a generally volatile criminal character have been upheld by the Supreme Court,” citing Hewitt.
*1013 Second, the court errs in holding that prison officials may rely on suspicions and subjective evaluations only “if appropriate documentation were present and the same conveyed to Williams.” Op. at 1009. Again, this is contrary to Hewitt, 459 U.S. at 476-77, 103 S.Ct. 864. It also conflicts with the Court’s discussions of the risks to security that may arise if prison officials must hold adversary hearings on such issues. See Wilkinson v. Austin, 545 U.S. 209, 227-29, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). The court instead relies on Clark v. Brewer, 776 F.2d 226, 234 (8th Cir.1985). But Clark referred only to “new evidence,” not opinions based upon rumor and suspicion, and it cited only Wolff v. McDonnell, 418 U.S. 539, 564, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), a prison discipline case. I know of no decision prior to this that has required an evidentiary inquiry into the “rumor, reputation, and even more imponderable factors” on which prison administrators may constitutionally rely in segregating an inmate. Hewitt, 459 U.S. at 474, 103 S.Ct. 864.
Third, the court errs by assuming that the “meaningful” periodic review required by Kelly, 525 F.2d at 400, must be anything more than the review required by Hewitt — one that ensures the prison is not using administrative segregation “as a pretext for indefinite confinement of an inmate.” 459 U.S. at 477 n. 9, 103 S.Ct. 864.[6] The error in requiring more was confirmed earlier this year, when a unanimous Court held that procedural due process concerns “whether the constitutionally requisite procedures [were] provided,” not whether they “produced the result that the evidence required.” Swarthout v. Cooke, — U.S. -, 131 S.Ct. 859, 862-63, 178 L.Ed.2d 732 (2011). The presence of constitutionally sufficient procedures is “the beginning and the end” of the due process inquiry, the Court explained. Id. at 862. By focusing on whether defendants proved “a valid and subsisting reason or reasons for the segregation,” op. at 1007, quoting Kelly, 525 F.2d at 400, the court crosses a line the Supreme Court has carefully drawn.
Fourth, the court loses sight of the proper, context-specific due process inquiry mandated by Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). “It is axiomatic that due process is flexible and calls for such procedural protections as the particular situation demands.” Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 12-13, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Inmates are confined in administrative segregation for a variety of reasons — “to protect the prisoner’s safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer.” Hewitt, 459 U.S. at 468, 103 S.Ct. 864. Relying on Kelly, the court applies a one-size-fits-all approach to the question of periodic review procedures. The duration of segregation determines the need for periodic review, and the nature of that review may vary depending on the initial reason for segregation. When an inmate is segregated for his own protection, as Williams was in 1995, no review is likely needed until the danger subsides or the inmate requests review. For prolonged segregation of inmates who “seek nothing less than to control prison life and to extend their power outside prison walls,” the Court held that due process requires informal, non-adversary procedures before the initial confinement but made no mention of periodic review. Wilkinson, 545 U.S. at 227, 229, *1014 125 S.Ct. 2384. By contrast, when administrative segregation is imposed to encourage good behavior, such as not trying to escape, it may be reasonable to require that periodic reviews “give the prisoner some idea of the requirements for, and his progress toward, more favorable placement.” Toevs v. Reid, 646 F.3d 752, 758 (10th Cir.2011).
Fifth, the court errs in holding that whether a periodic review was “meaningful” is a question of fact we review for clear error. Op. at 1000, citing Kelly, 525 F.2d at 400. “The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.” Mathews, 424 U.S. at 333, 96 S.Ct. 893 (quotation omitted). Determining whether the process afforded an inmate “satisfied the minimum requirements of the Due Process Clause,” Hewitt, 459 U.S. at 472, 103 S.Ct. 864, may involve findings of underlying fact we review for clear error, such as whether a disputed review session in fact occurred. Whether the procedures afforded were constitutionally adequate, however, “is purely a question of law.” Peery v. Brakke, 826 F.2d 740, 743 (8th Cir.1987); see Swarthout, 131 S.Ct. at 862. Here, we are defining an adequate procedure as one that is meaningful. Therefore, whether a particular review was meaningful is a question of constitutional law we review de novo. Cf. United States v. Mendenhall, 446 U.S. 544, 551 n. 5, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (in determining the issue of Fourth Amendment seizure, “the correctness of the legal characterization of the facts appearing in the record is a matter for this Court to determine”).
II.
Applying the correct due process standards to the facts of this case, I conclude that Williams was afforded constitutionally adequate periodic reviews prior to his release from administrative segregation in March 2009. Of greatest significance is Williams’s personal history:
• 1981: Convicted of murder; sentenced to life in prison without parole.
• 1982: Convicted of murder for death of another inmate.
• October 1982: Involved in violent altercation with guards.
• November 1982: Psychologist reports “he obviously enjoyed discussing some of the murders he was involved in gruesome detail”; strongly recommends he remain segregated due to “history of violence and emotional instability.”
• February 1990: Major disciplinary violation involving drugs and alcohol.
• January 1994: Major disciplinary violation involving drugs and alcohol. Urine tested positive for cannabinoid.
• September 1994: Mental Health Services reports Williams “previously diagnosed as psychotic.” Notes “some denial [but] history is strongly positive for polydrug abuse.”
• December 1994: Major disciplinary violation; placed in administrative segregation.
• January 1995: Major disciplinary violation involving drugs and alcohol.
• December 1995: Assaulted by other inmates; ADC officials suspect drug trafficking; placed in administrative segregation for his own protection.
• January 1996: Transferred to Utah Department of Corrections for his own protection.
• July 1996: Utah disciplinary conviction for theft of property, threats to staff, and positive breath test.
• March 1999: Utah disciplinary conviction for alcohol abuse and possessing shank.
*1015 • June 1999: Returned to ADC at his request.
• October 1999: ADC mental health evaluator advises Warden Outlaw, “Williams is a known drug dealer and it is my professional belief that, if released [from administrative segregation], he will return to drug traffic and trading in drugs.”
• October 2000: Mental Health Services Segregation Review Form describes Williams as “manipulative” and “malingering.”
• December 2000-June 2002: four Mental Health Services Segregation Review Forms describe Williams as “manipulative.” Two describe him as “aggressive.”
• July 2001: Major disciplinary violation for possession of contraband currency and marijuana.
• February 2002: Asks to enroll in anger management and substance abuse treatment courses.
• October 2002: Major disciplinary violation for refusal to obey order to be searched.
• November 2004: Major disciplinary violation for attempting to pass pills and tobacco to another inmate.
• January 2005: Major disciplinary violation for lying to staff (false that his headphones were missing).
Given this long history of conduct posing a severe threat to prison security, and Williams’s minimal liberty interest in being released from administrative segregation, I conclude (i) he was constitutionally entitied to no more than annual periodic reviews; [7] (ii) it was reasonable to place the burden on Williams to persuade the reviewing correctional officials that he was no longer a serious threat to prison security if released into the general population; and (iii) due process required no more than notice of such reviews, an opportunity to be heard informally, and a cryptic response following the review advising if he had not met that burden. As the record makes clear that defendants provided Williams frequent, non-pretextual reviews that satisfied these procedural criteria, his right to procedural due process was not violated by defendants’ failures to make the process more “meaningful.”
The Supreme Court has emphatically warned the courts of appeals that, if state prison officials have afforded an inmate constitutionally adequate procedures in making disciplinary and classification decisions, whether those procedures “are properly applied ... is no part of [our] business.” Swarthout, 131 S.Ct. at 863. In my view, the court has failed to obey that command. I respectfully dissent.

. The Eleventh Circuit did not make this improper assumption in Al-Amin v. Donald, 165 Fed.Appx. 733, 739 (11th Cir.2006) (unpublished).

. Cf Wilkinson, 545 U.S. at 217, 230, 125 S.Ct. 2384. Therefore, the court errs in awarding nominal damages of more than $1 per year. The perceptive reader no doubt wonders why we have not discussed the qualified immunity that so clearly protected defendants from Williams’s damage claims. See, e.g., Toevs, 646 F.3d at 760-61; Senty-Haugen v. Goodno, 462 F.3d 876, 888 (8th Cir.2006). Defendants pleaded and preserved this defense all the way to trial. The district court committed reversible error in not addressing it, but counsel for defendants inexplicably forfeited the defense by not raising it on appeal. That was an unfortunate blunder.